UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVID O'BERRY HEARN,

                    Petitioner,

-vs-                                                  Case No. 3:07-cv-320-J-33MCR

SECRETARY, DEPARTMENT OF CORRECTIONS,

                    Respondent.
_____/

## ORDER

This case is on remand from the United States Court of Appeals for the Eleventh Circuit. (See Doc. 28).

THE REMAND

David O'Berry Hearn, a Florida prisoner, appealed *pro se* the judgment against his petition for a 28 U.S.C. § 2254 writ of habeas corpus. Hearn argued that the state court erred when it denied his motion to suppress because there were false statements in the affidavit that provided probable cause for a warrant to search his property. The federal district court ruled that the issue was barred from review under *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052 (1976), and the Court of Appeals for the Eleventh Circuit granted a certificate of appealability to address that ruling. Subsequently, the Eleventh Circuit reversed and remanded to the district court stating:

> "Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal

habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494, 96 S. Ct. at 3052. We have interpreted the phrase "opportunity for full and fair litigation" to "mean[] just that: an opportunity.'" [sic] *Lawhorn v. Allen*, 519 F.3d 1272, 1287 (11th Cir. 2008) (quoting *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)). In *Caver,* we have explained that "if state procedures afford the defendant in a criminal case the opportunity to litigate whether evidence obtained in violation of the fourth amendment should be excluded, and if that opportunity to litigate fourth amendment issues is 'full and fair[,]' ... then *Stone v. Powell* precludes federal habeas corpus consideration of those issues whether or not the defendant avails himself of that opportunity." 577 F.2d at 1193.

A state does not afford a defendant a full and fair opportunity to litigate the validity of a search under the Fourth Amendment when the state courts fail to make essential findings of fact. In *Tukes v. Dugger*, we addressed whether *Stone* foreclosed review of the validity of a search when the defendant presented his argument but the state courts failed to make findings of fact to resolve that argument. 911 F.2d 508, 513-14 (11th Cir. 1990). We concluded that the state courts had failed to afford the defendant a full and fair opportunity to litigate the validity of the search when they did not make findings of fact about whether the defendant had invoked his right to counsel or was in custody when he consented to the search of his home. We stated, "The trial court's failure to make explicit findings on matters essential to the fourth amendment issue, combined with the fact that the state appellate court issued only a summary affirmance, precludes a conclusion in this case that the state provided the meaningful appellate review necessary to erect *a Stone v. Powell* bar to our review of the claim." *Id.* at 514.

In the light of *Tukes*, the district court erred when it concluded that *Stone* foreclosed review of Hearn's petition. Hearn argued at trial and on appeal that the warrant to search his home was obtained by use of false statements in the supporting affidavit. At the *Franks* hearing, Hearn introduced copies of telephone records that allegedly established that no call was made from his home when the police questioned Wade in his house, which gave the police reason to enter Hearn's property in search of a suspect in the armed kidnapping. Neither the trial court nor the appellate court made any findings of fact to reconcile the statements of the police and the telephone records. Although we presume, as we did in *Tukes*, that Hearn's Fourth Amendment argument was "given ... careful, judicious, and studied attention[,]" the state courts nevertheless failed to make "explicit findings on matters essential to" Hearn's Fourth Amendment argument. 911 F.2d at 514. The summary denial of Hearn's motion to suppress, coupled with a summary affirmance by the Florida appellate court, was "insufficient to deny [Hearn] consideration of the merits of his constitutional claim on federal habeas

2

corpus review." *Id.*

(Doc. 28).

BACKGROUND

The police requested a search warrant for Hearn's property while investigating an armed kidnapping in Nassau County, Florida. The victim of the kidnapping identified Mark Land as one of her three assailants. When the police apprehended Land at Mark Wade's home, he identified Mark Wade and Darryl Smith as his cohorts. While the police were at Mark Wade's home, a telephone rang. The police, believing the call to be from Wade, traced the call to Hearn's home and drove to Hearn's residence to search for Wade.

According to the affidavit for the search warrant, the police believed that Wade was armed and dangerous and they surrounded Hearn's home. As the police approached the house, they observed through the open doorway of a shed, and behind the shed, paraphernalia used to manufacture methamphetamine. Based on their observations, the police requested a warrant to search Hearn's home, "together with the yard and curtilage," "any vehicles," and "any person reasonably believed to be engaged in or connected with [the] illegal activity," for "any instrumentalities possessed or used in connection" with the manufacture of methamphetamine, and to seize "methamphetamine and anything known to be used in the manufacture of methamphetamine[.]"

A Florida court issued a warrant to search Hearn's property. The police executed the search warrant and seized from the house, its curtilage, and vehicles near the house evidence associated with the manufacture of methamphetamine, including liquid methamphetamine, precursor materials and paraphernalia used to "cook" methamphetamine, about 3,700 dollars in cash, surveillance equipment, 60 guns, and

ammunition. Hearn was arrested and charged by information with trafficking in methamphetamine, the sale or manufacture of a controlled substance, possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia.

Hearn moved to suppress the evidence seized from his property on two grounds. First, Hearn argued that "[t]he original intrusion upon [his] property by law enforcement and upon which the information which led to the search warrant was based, was pretextual and, as such there was no probable cause for the search or the issuance of the search warrant[.]" Second, Hearn argued that, even "[i]f the officers [were] to be believed [about the] phone call[,]" they should have requested a search warrant before they entered Hearn's property. Hearn alleged that the police had made "multiple unsuccessful attempts" to purchase drugs from him through confidential informants, and the officers misstated information that they had acquired during their investigation of an armed kidnapping so they could enter Hearn's property. Hearn also asked the trial court for an evidentiary hearing as required by *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978), and to "void[]" the search warrant because it was based on an affidavit that contained false statements.

The trial court held a hearing on Hearn's motion to suppress. The State and Hearn presented evidence regarding the information relied on by the police to enter Hearn's property; the observations by the police of paraphernalia used to manufacture methamphetamine; and the evidence seized after the police executed the search warrant. Hearn introduced copies of telephone records from the date of the search that he alleged established that no calls were made from his house to Wade's house during, or within a few hours of, the time that the officers were in Wade's home. At the conclusion of the hearing, the trial court summarily "den[ied] [Hearn's] motion to suppress as to the physical

4

evidence."

Hearn pleaded guilty to the sale and possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia. In exchange for Hearn's plea of guilty, the state nolle prossed Hearn's trafficking charge. The trial court sentenced Hearn to ten years incarceration.

Hearn appealed the denial of his motion to suppress. Hearn argued that the police entered his property without probable cause and could not obtain a search warrant even though they observed drug paraphernalia in plain view. Hearn alleged that "[e]ven assuming exigent circumstances" that the police were in search of a "suspect armed felon[,]" the facts known to the police "were insufficient to establish probable cause to believe that Wade would be at Hearn's house."  As part of his argument, Hearn alleged facts different from those stated in the affidavit and, in a footnote, stated that "[t]he false statements in the affidavit should be excised. *Franks v. Delaware*, 438 U.S. 154 (1978)." In the alternative, Hearn argued that, even if the police were entitled to enter his property, they lacked probable cause to request a search warrant. The state appellate court affirmed Hearn's conviction without opinion.

Hearn also filed a motion for post-conviction relief. See Fla. R. Crim. P. 3.850. Hearn argued that the trial court erred when it denied his motion to suppress because the affidavit contained "patently false statements" and those statements "were not excluded from consideration at [the] hearing [on his motion to dismiss]." The trial court denied Hearn's motion on the ground that the issue had been resolved in his direct appeal. The state appellate court affirmed the denial of Hearn's post-conviction motion without opinion.

Hearn filed a federal petition for a writ of habeas corpus and argued that the trial

court was misled by false testimony in the affidavit for the search warrant, and the state responded that the federal court could not reach the merits of Hearn's argument for two reasons. First, the state argued that Hearn received a full and fair opportunity to litigate his *Franks* argument in state court and the federal court was barred under *Stone* from examining the issue in a habeas corpus proceeding. Second, the argued that Hearn failed to exhaust his *Franks* argument in state court and he had not alleged cause and prejudice to excuse the procedural default. The state explained that Hearn argued on direct appeal that the officers violated the Fourth Amendment when they entered his property without probable cause and that Hearn's challenge to the affidavit and reference to *Franks* in a footnote did not fairly present the constitutional issue to the state court. In the alternative, the state argued that Hearn's challenge to the search warrant lacked merit.

The district court ruled that *Stone v. Powell* barred review of Hearn's petition. The district court found that the state courts afforded Hearn a full and fair opportunity to litigate the validity of the search of his property. The district court denied Hearn's request for a certificate of appealability.

The Eleventh Circuit granted a certificate of appealability on one issue: Whether the district court erred in finding that appellant's Fourth Amendment claims were barred under *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052, 49 L.Ed. 2d 1067 (1976).  After finding that the district court had erred, the Eleventh Circuit reversed and remanded for further proceedings.

STANDARD OF REVIEW

Because Hearn filed his petition after April 24, 1996, the petition is subject to the more deferential standard for habeas review of state court decisions under Section 2254

pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). The Eleventh Circuit described the standards in *Putman v. Head*, 268 F.3d 1223 (11th Cir. 2001):

> The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions. *See Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. *See Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000).
>
> A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. *See id.* An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. *See id.* Notably, an "unreasonable application" is an "objectively unreasonable" application. *See Williams*, 529 U.S. at 412, 120 S.Ct. at 1523.
>
> Lastly, § 2254(d)(1) provides a measuring stick for federal habeas courts reviewing state court decisions. That measuring stick is "clearly established Federal law." 28 U.S.C. § 2254(d). Clearly established federal law is not the case law of the lower federal courts, including this Court. Instead, in the habeas context, clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision." *Williams*, 529 U.S. at 412, 120 S.Ct. at 1523.

*Id.* at 1241-1242.

Additionally section 2254(d)(2), as opposed to subsection (d)(1), applies to habeas issues that challenge the state court's ruling upon a question of fact. The federal habeas writ will issue only if the state court's factual decision was objectively unreasonable in light of the evidence. *See Harpster v. State of Ohio*, 128 F.3d 322, 326-27 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). Further, the state court's

factual findings are presumed correct unless petitioner can rebut them with "clear and convincing evidence." 28 U.S.C. S 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997)(noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).

### APPLICABLE CASE LAW -- *FRANKS v. DELAWARE*

As stated above, on remand, the Eleventh Circuit held:

> Hearn argued at trial and on appeal that the warrant to search his home was obtained by use of false statements in the supporting affidavit. At the *Franks* hearing, Hearn introduced copies of telephone records that allegedly established that no call was made from his home when the police questioned Wade in his house, which gave the police reason to enter Hearn's property in search of a suspect in the armed kidnapping. Neither the trial court nor the appellate court made any findings of fact to reconcile the statements of the police and the telephone records.

(Doc. 28).

Therefore, *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674 (1978) is applicable to Hearn's case. The *Franks* Court found that where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment, as incorporated in the Fourteenth Amendment, requires that a hearing be held at the defendant's request. The *Franks* Court further stated:

> (a) To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. The allegation of deliberate falsehood or of reckless disregard must point out specifically with supporting reasons the portion of the warrant affidavit that is claimed to be false. It also must be accompanied by an offer of proof, including affidavits or sworn or otherwise reliable statements of witnesses, or a satisfactory explanation of their absence.

8

(b) If these requirements as to allegations and offer of proof are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required, but if the remaining content is insufficient, the defendant is entitled under the Fourth and Fourteenth Amendments to a hearing.

(c) If, after a hearing, a defendant establishes by a preponderance of the evidence that the false statement was included in the affidavit by the affiant knowingly and intentionally, or with reckless disregard for the truth, and the false statement was necessary to the finding of probable cause, then the search warrant must be voided and the fruits of the search excluded from the trial to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. 455-56.

## THE PRESENT PETITION

Hearn raised one ground for relief in his 28 U.S.C. § 2254 petition for writ of habeas corpus:
>The trial court was mislead by false testimony in the probable cause affidavit which resulted in a fundamental 4th amendment violation. Deputy Johnathan Hooper's affidavit of probable cause was based on false information. Affidavit stated: "During the interview Mr. Land '<u>received</u>' a phone call from 845-4820, which was later cross-referenced by the Nassau County Sheriff's Office to the above residence." Telephone records from Hearn's service provider were subpoenaed and entered into evidence at his suppression hearing. Those records prove no call originated from his phone during the time in question. Phone records also prove the non-existent phone call was never cross-referenced by Nassau County Sheriff's Office as alleged in the affidavit.
>Affidavit stated: "Mr. Land said the call came from Mr. Wade." That statement was proven false at the suppression hearing. Mr. Land testified that the officer "<u>told him</u>" a call came in from Hearn's house. The "<u>only</u> probable cause officers had to be at Plaintiff's residence was the untruthful statements listed above.

## DISCUSSION

In this case, the officers did not violate the Fourth Amendment by driving to Hearn's house looking for a suspect in an armed kidnaping. They drove to Hearn's house because, when the officers apprehended co-defendant Land at Wade's home, either he or Heath

9

Ray, who was also at Wade's home, mentioned that Wade often was with Hearn at Hearn's home. In addition, Officer Mann saw Hearn's telephone number or name on the telephone caller I.D. after the telephone rang at Wade's home. Based on these facts, the officers did not need a warrant to visit Hearn's house to determine whether Wade, the third co-defendant, was at Hearn's house.

When the officers went to Hearn's house, there was no enclosed curtilage area, and two officers walked up to the front door to talk to any occupants of the dwelling. It is well-settled that such a front door or front porch area is a public place. *United States v. Santana*, 427 U.S. 38 (1976). Thus, the officers were legally entitled to be on the porch. As the Eleventh Circuit stated in *United States v. Taylor*:

> The Fourth Amendment, which prohibits unreasonable searches and seizures by the government, is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises. *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). *United States v. Tobin*, 923 F.2d 1506, 1511 (11th Cir. 1991) (no warrant necessary for officers to approach house to question the occupants). "Absent express orders from the person in possession," an officer may "walk up the steps and knock on the front door of any man's 'castle,' with the honest intent of asking questions of the occupant thereof." *Davis v. United States,* 327 F.2d 301, 303 (9th Cir. 1964). Thus, "[o]fficers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just as any private citizen may." *Estate of Smith v. Marasco*, 318 F.3d 497, 519 (3d Cir. 2003).

*United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006).

The other officers also did not enter any protected premises. They walked around an open field to the back of the property near the woods adjacent to a hunt camp. From this position, one officer observed the items consistent with methamphetamine production and developed probable cause to believe criminal laws were being violated. The officers'

observations did not violate the Fourth Amendment. *Washington. v. Chrisman*, 455 U.S. 1 (1982).

In a series of cases, the United States Supreme Court has outlined the scope of the protection of what is referred to as the open fields doctrine. These decisions are based on the text of the Fourth Amendment which protects persons, houses, papers, and effects, but not land. The Court has held that there is a recognized expectation of privacy only in the house and a traditional curtilage area. *United States v. Dunn*, 480 U.S. 294, 301, 107 S. Ct. 1134, 1139, 94 L. Ed. 2d 326 (1987); *Oliver v. United States*, 466 U.S. 170 (1984).

"The curtilage concept originated at common law to extend to the area immediately surrounding a dwelling house...." *Dunn*, 480 U.S. at 300, 107 S.Ct. at 1139. The concept of curtilage plays a part in determining the reach of the Fourth Amendment's protections. The Supreme Court used the concept of curtilage in *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), to distinguish between the area outside a person's house which the Fourth Amendment protects, and the open fields, which are afforded no Fourth Amendment protection. In general, the curtilage is defined as the area around the home which "harbors those intimate activities associated with domestic life and the privacies of the home." *Dunn*, 480 U.S. at 301 n. 4, 107 S.Ct. at 1140 n. 4.

Whether the Fourth Amendment protects privacy interests within the curtilage of a dwelling house depends on four factors: (1) the proximity of the area claimed to be curtilage to the home; (2) the nature of the uses to which the area is put; (3) whether the area is included within an enclosure surrounding the home; and, (4) the steps the resident takes to protect the area from observation. *United States v. Hall,* 47 F. 3d 1091, 1097 (11th Cir. 1995) (*citing and quoting Dunn*, 480 U.S. at 301, 107 S.Ct. at 1139 and *Hester*, 265 U.S.

at 58, 44 S.Ct. 446).

*Oliver* established that whether the acreage around a home is wooded, fenced, or posted with no trespassing signs is irrelevant as to whether the area is protected by the Fourth Amendment. The officers in Hearn's case did not infringe on any "protected" curtilage area but instead, walked behind the travel trailer and the shed some twenty to thirty yards behind the house. There they developed probable cause to believe the shed was being operated as a methamphetamine lab.

Once they had probable cause to search the premises, the officers could detain the individuals until they obtained a warrant; could arrest the individuals for possession of the drug and then obtain a warrant; or obtain consent to enter the premises. *See Illinois v. McArthur*, 531 U.S. 326, 331-32 (2001); *Segura v. United States*, 468 U.S. 796 (U.S. 1984).

In the present case, the officers called a narcotics detective who confirmed that, based on the officers' description of the premises, the area observed was a methamphetamine lab. The detective obtained a warrant which was subsequently executed.

To the extent that there was a miscommunication between the officers regarding why they went to look for the third suspect at Hearn's house, this miscommunication was irrelevant to a determination of probable cause and was not knowingly false or recklessly included in the warrant. As the Court stated in *United States v. Jackson*:

> In other words, to support a *Franks* motion, Jackson's trial counsel would have been required to make an offer of proof (1) that the Complaint for Search Warrant ("Complaint") contained a false statement, (2) that Agent Brueggemann's state of mind in making the false statement was at least reckless, and (3) that the false statement was material, i.e., necessary for a finding of probable cause.

*United States v. Jackson*, 103 F.3d 561 (7th Cir. 1996).

The Eleventh Circuit stated in *U.S. v. Vann*:

> Under *Franks*, when a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). To be entitled to a hearing, the defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false" and provide "a statement of supporting reasons." *Id.* at 171, 98 S.Ct. at 2684. The defendant's attack "must be more than conclusory" and the allegations of a deliberate falsehood or of reckless disregard for the truth "must be accompanied by an offer of proof." *Id.* Furthermore, the alleged deliberate falsity or reckless disregard must be "only that of the affiant, not of any nongovernmental informant." *Id.*

*United States v. Vann*, 336 Fed. Appx 944, 948 (11th Cir. 2009).

To prevail on his claim, Hearn has to establish more than that an incorrect statement was included in the warrant. Hearn has to show that the incorrect statement was a deliberate falsity or a reckless disregard for the truth. *See United States. v. Arbolaez*, 450 F.3d 1283, 1294 (11th Cir. 2006); *United States v. Novaton*, 271 F.3d 968, 987 (11th Cir. 2001). The testimony at the suppression hearing demonstrates that Hearn has not satisfied his burden.

**Testimony at the Suppression Hearing**

The testimony at the hearing was that Officer Mann learned of a connection between the wanted individual (Wade) and Hearn. (Ex. C 8). Officer Mann testified that while the officers were at Wade's home, the phone rang, but she did not answer it. She testified that she checked the caller identification on the telephone log and Hearn's name or number came up. (Ex. C 9-11). Officer Mann did not remember whether Mr Hearn's name and

13

number were the most recent call to the Wade residence. She did not remember if the home phone at the Wade house rang, or whether some other telephone rang. She just remembered that a telephone rang and she checked the Wade home telephone caller I.D. log. (Ex. C 9-11).

This information, that Hearn's telephone number would have been on the caller identification log at Wade's house was verified by the testimony of Darrell Lee Smith. Smith testified that he called the Wade residence from Hearn's home earlier that day, December 16, 2003. (Ex. C 65-68). Wade also testified he received a call from Smith earlier the morning of December 16, 2003. (Ex. C 94) So there was a telephone call connection between the two residences and the call involved two perpetrators of the offense being investigated.

Officer Nolan testified that Detective Mann stated to him that she received a call, and that she believed the telephone call was from Mark Wade, and that the telephone call came from Hearn's residence on Magnolia (Avenue or Lane). (Ex. C 34). Nolan further testified "She (Officer Mann) told him that she received a call that she believed to be from Mark Wade (the missing suspect), from that, the numerical on it, it showed the numerical, and it was then cross referenced by her, and she believed that he was at the residence on Magnolia." (Ex. C 36)

The incorrect information in the search warrant was related to this telephone call. The error in the affidavit was the indication that the telephone that rang while the officers were at Wade's home was the telephone call that connected Hearn's residence to one of the perpetrators and that it was Mr Wade who called.

There was no showing or even attempt to show that Detective Hooper who came

14

on the scene later in the process deliberately included any false information in the affidavit or did it recklessly. He testified he did not have the opportunity to review any reports but based his statements on matters orally communicated to him by the officers. Hooper was not sure whether he received the information about Wade's possibly being at Hearn's home from Detective Mann or Detective King. (Ex C 56).

Detective King was not called by anyone to testify at the suppression hearing. (Ex. C) . Thus, there was no showing that any misstatement in the warrant affidavit was any more than information passing between several people prior to being placed in the affidavit. Given Nolan's misunderstanding of what Mann said about the telephone call, the likely scenario is that information was garbled because it passed through several individuals. Perhaps Hooper was negligent in not clarifying what he was told. However, there was no showing of intentional falsehood or reckless disregard for the truth. Therefore, there was no *Franks* violation.

Additionally, the timing of the telephone call to the Wade residence was not a material misrepresentation. Irrespective of the timing of the call, the call established that there was communication between the Hearn and the Wade residences. The officers were trying to locate an armed kidnaper before he fled and were chasing leads to locate where he might be. The information about a connection to Hearn provided the officers conducting the search for the remaining suspect a reason to investigate whether Wade, the third suspect, was at Hearn's residence. Thus, there was no material misrepresentation and no Fourth Amendment problem with the affidavit.

Moreover, the alleged misinformation was placed in the warrant affidavit not to establish probable cause for the search, but to show the sequence of events and why the

15

officers went to Hearn's house. The misinformation about the telephone call was not necessary for probable cause for a warrant. The officers knew that a kidnaping had been committed and they knew who the suspects were. They had already arrested two of the perpetrators and were looking for the third perpetrator.

In conducting the search for the last armed kidnaper, the officers did not need probable cause to believe the third individual had gone to Hearn's house or any other house in order for the officers to drive to the house and to ask the occupants if this third individual was present. The officers had a right to walk up to the front door and ask if the suspect was present. Other officers had a right to traverse open fields and take up positions some 20 to 30 yards behind the residence in case the suspect was present and attempted to flee. In this regard, the testimony at the hearing established that Hearn's house was next to a hunt club and "all sorts of people traversed this land." (Ex. C 96). The definitive testimony as to the officers' path was that both officers traveled through the open fields to a position behind the property from which they observed evidence of methamphetamine manufacturing. (Ex. C 25-26, 38-39).

If the alleged false information was excluded or the correct information inserted, the affidavit would indicate that during their time at Wade's house, an officer checked the caller I.D. log which showed a call from Hearn's telephone number to Wade's telephone number. If the information was redacted from the warrant affidavit (as is required in *Franks*) probable cause for the warrant still exists. The affidavit provides that the officers were "working" an armed kidnaping and one of the identified perpetrators was still at large. The officers were looking for him and learned of a telephone call from Hearn's home to Wade's home and that Wade was one of the perpetrators. Based on this knowledge, they went to Hearn's

home to see if Wade, the suspect, was there. While there, they traversed open fields and observed methamphetamine production facilities. They confirmed that what they observed was a methamphetamine lab with narcotics detectives who obtained the warrant on the basis of the officers' observations. Thus probable cause existed irrespective of any alleged incorrect statement.

Finally, *Franks* provides that Hearn was entitled to a hearing. Hearn had a hearing on his suppression motion which alleged a *Franks* violation. However, Hearn failed to offer any evidence establishing intentional falsity or reckless disregard for the truth on the part of the affiant or any other officer. The state trial court denied the motion to suppress. There has been no showing that the trial court's ruling, which is supported by evidence in the record establishing a link between Hearn's home and the perpetrators of the crime, is contrary to any established United States Supreme Court Law.

The state trial court judge did not unreasonably apply United States Supreme Court precedent when the state trial court denied the motion to suppress because the observations of the officers who were where they were entitled to be was not an illegal search, and those observations provided probable cause for the warrant. Even if some of the information relating to the telephone call was incorrect, false information was not knowingly or intentionally or recklessly included in the affidavit. When the alleged information is redacted, the warrant affidavit contains sufficient information to establish probable cause. Therefore, the state court ruling denying the motion to suppress was not contrary to or an unreasonable application of established United States Supreme Court precedent.

Accordingly, the Court orders:

That Hearn's petition is denied. The Clerk is directed to enter judgment against Hearn and to close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on April 13, 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
David O'Berry Hearn